26 C.C.P.A. (Patents)

## In re DAVIS.

Patent Appeal No. 4122.

Court of Customs and Patent Appeals.
May 29, 1939.

Roy W. Johns, of Chicago, Ill., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 8 to 11, inclusive, in appellant's application for a patent for an alleged invention relating to a method of deodorizing cream.

Claims 8 and 11 are illustrative of the appealed claims. They read:

"8. The method of deodorizing cream which comprises preheating cream to flash pasteurizing temperature, mixing with steam which is under twenty-five to fifty pounds pressure and permitting the steam and volatile gases to escape in an open chamber."

"11. The method of deodorizing cream which comprises preheating the cream to flash pasteurizing temperatures, mixing the cream with steam having a temperature between 212° Fahrenheit and 300° Fahrenheit, releasing the mixture of cream and steam in an open chamber, adding additional steam to said chamber, drawing off the steam and volatile gases and conveying the cream from said chamber for cooling."

The references are: Grindrod, 1,714,- 597, May 28, 1929; Grindrod, 1,819,023, Aug. 18, 1931; Murray, 2,003,454, June 4, 1935.

The Board of Appeals allowed claims Nos. 2, 4, 6, and 7 in appellant's application, because, it is stated in its decision, they define a method of treating cream with *superheated steam;* whereas, the reference patent to Murray taught that cream would be injured when subjected to high temperatures unless *saturated steam* was used.

Of the allowed claims, claim 4 is illustrative. It reads: "4. The method of deodorizing cream which comprises heating the cream to flash pasteurizing temperature, mixing the preheated cream with steam having a temperature substantially above the boiling point, conveying the mixture under pressure to an open chamber, drawing off steam and volatile gases from said chamber and thereafter cooling said cream."

In its decision, the Board of Appeals stated:

"The Murray patent indicates that cream, or similar bodies which are injured at high temperature, must be treated with saturated steam rather than with super-

heated steam. We do not feel that this patent fairly anticipates the claims above set forth [allowed claims 2, 4, 6, and 7] as they involve a procedure in direct conflict with the Murray teachings.

"The patents to Grindrod show processes for sterilizing foods, milk products in particular, which involve the use of steam at comparatively high temperatures but in accordance with these patents, *the steam used is either saturated,* though *at high temperature and pressure,* or the material treated is in a diluted state. We do not feel that these patents suggest the feasibility of using superheated steam [called for in the allowed claims] for the treatment of cream.

"Claims 8–11 inclusive only call for the use of *high-pressure steam, not* for *superheated steam.* As pointed out by the examiner, *Murray teaches the use of saturated steam under high pressure.* In our opinion his teachings are sufficiently comprehensive to include the procedure set forth in claims 8–11." (Italics ours.)

Counsel for appellant states in his brief that the two reference patents to Grindrod were included in the record solely because they were mentioned in the decisions of the Primary Examiner and the Board of Appeals; that they need not be considered by the court in connection with the appealed claims; and that the patent to Murray is the only reference that need be considered.

The Primary Examiner rejected claims 8, 9, and 10 on the patent to Murray in view of the disclosure in the Grindrod patent, No. 1,714,597. Appealed claim 11 was rejected by the examiner on the patent to Murray and the disclosure in the Grindrod patent, No. 1,714,597, in view of the Grindrod patent No. 1,819,023.

In his decision, the examiner stated, inter alia:

"Claims 8 to 11 only call for high pressure steam, and do not recite whether this steam is saturated or superheated. Murray teaches the use of 'saturated steam under high pressure' * * * in all cases, so that claims 8 to 11 clearly fall within Murray's disclosure. High pressure saturated steam is always at a temperature above 212°F.

* * * * * *

"Claim 11 was rejected on Murray with Grindrod 1,714,597 in view of Grindrod 1,819,023. This claim is more limited than claims 1 to 10 in that it includes the addi-

tional step of injecting steam into the chamber. Such an additive step, however, is taught in the Grindrod patent 1,819,023.

"The Grindrod patent 1,819,023 is for a method of sterilizing milk and cream. The fluid is treated in cavity 13 with steam which may be 'at a pressure of approximately 100 lbs. to the inch and at a temperature in excess of 300°F.' * * * The fluid escaping from cavity 13 finally passes into chamber 50, where it is further treated with steam injected from pipe 56. It is thus seen that the cream is treated with high temperature steam not only in the flow cavity 13, but also in the secondary chamber 50. It has been held that there would be no invention in using this supplementary steam treatment in Murray's process, injecting steam into his chamber 1."

One of the contentions made by counsel for appellant is that there is no teaching in the patent to Murray of preheating cream to flash pasteurizing temperatures.

It appears from appellant's application that flash pasteurizing temperatures are about 180° to 195° F., and that such is the "temperature to which cream is conventionally heated in flash pasteurizers."

The patent to Murray clearly teaches the preheating feature called for in appellant's appealed claims. We quote from the patent: "The liquid to be treated may have been previously pasteurized or raised to a comparatively high temperature in which case it would be admitted hot to the float chamber." The patentee further states: "* * * When saturated steam is used there is found to be in practice little or no increase in the visible temperature of the fluid—presumably due to the degree of vacuum within the container. It will be understood therefore that in treating such delicate fluids as cream, the bodies of which are injured at a high temperature it is essential to use saturated steam, which also provides the washing effect so desirable in assisting the process. In those cases, however, wherein the use of the superheated steam will not injuriously affect the liquid superheated steam may be employed."

The brief of counsel for appellant contains the statement that—"It is one thing to mix superheated steam under high pressure with cream. It is quite another thing to use saturated steam drawn through a fluid *by a vacuum.* The appellant does the first. Murray does the second." (Italics ours.)

924

The patentee Murray states that, according to his method, the "fluid is treated in a horizontally or substantially horizontally disposed steam jacketed vacuum container"; whereas, appellant states in his application that there is no "appreciable pressure or vacuum in the deodorizer chamber proper," and that he does not depend on the use of a vacuum to secure proper results.

Each of the appealed claims call, in substance, for releasing the mixture of steam and cream in an open chamber, and it is contended by appellant that that feature is not disclosed in the references of record, and that, therefore, the method defined in the appealed claims is not anticipated by the disclosure in the Murray patent.

It does not appear from the record that that issue was presented to either of the Patent Office tribunals. It is not mentioned in the decision of either the Primary Examiner or the Board of Appeals, nor was it called to the attention of either of those tribunals by a petition for rehearing.

Although counsel for appellant does not here assert that the open chamber feature called for in the appealed claims is sufficient to warrant a holding that the appealed claims are patentable over the references of record, he does state in his brief that the Board of Appeals erred in failing to notice that "important difference between the Murray teachings and the invention defined" in the appealed claims.

If the matter was not called to its attention, obviously the Board of Appeals did not err in failing to consider it. In view of the fact that it was not considered in the decisions of the tribunals of the Patent Office, and, so far as the record discloses, was not presented to either of them, we are not in a position to consider it here. In re Eitzen, 86 F.2d 829, 24 C.C.P.A., Patents, 778.

Each of the tribunals of the Patent Office held that the appealed claims call for the use of *saturated steam under high pressure*. It is apparent that the claims here on appeal do not call for the use of *superheated steam* as do at least some of the allowed claims.

The patent to Murray clearly discloses the use of *saturated steam under high pressure* in a process of deodorizing cream.

Counsel for appellant calls attention to the feature of "adding additional steam to said [open] chamber," as called for in appealed claim 11, and states in his brief that "there is, of course, not the remotest suggestion in Murray of adding additional steam to the chamber."

That statement of counsel is correct. It should be pointed out, however, that neither of the tribunals of the Patent Office held that that additional step was disclosed in the Murray patent. However, as fully explained in the quoted excerpt from the decision of the Primary Examiner, the patent to Grindrod, No. 1,819,023, clearly discloses the step of subjecting cream to a "supplementary steam treatment." We are of opinion, as was the Primary Examiner, that the addition of that feature to the Murray process would not involve invention.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.