35 C.C.P.A.(Patents)

## Application of GOLDBERG.
### Patent Appeal No. 5460.

Court of Customs and Patent Appeals.
June 1, 1948.

Smith, Olsen & Baird, of Chicago, Ill. (Glen E. Smith, of Chicago, Ill., and Stephen W. Blore, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner rejecting claims 5 to 7 inclusive, 20, 21, 24 to 34 inclusive, 38 to 40 inclusive, 50, and 51 for want of patentability over the prior art as follows:

Anderson, 1,069,995, August 12, 1913.

Balcker, 1,401,388, December 27, 1921.

Leland, 1,979,479, November 6, 1934.

Morgan, 2,017,865, October 22, 1935.

Johnson, 2,111,784, March 22, 1938.

Kingsbury, 2,114,389, April 19, 1938.

Johnson, 2,133,170, October 11, 1938.

Schwartz, 2,271,717, February 3, 1942.

Six claims were allowed.

The invention is succinctly described by the Primary Examiner as follows:

"The alleged invention relates to the control of a machine tool, shown specifically as a drilling machine, and comprises a double acting air operated piston for moving a rotating tool axially to and from the work piece. Solenoids actuate the valves for controlling the feed motor. The solenoids may be activated by starting switches which, in turn, are controlled by the proper positioning of a work piece in its holder, or, optionally, by a foot treadle. A holding or shunt circuit is provided in conjunction with each starting switch. The machine may also include means operated by compressed air for gripping and holding the work piece during the working stroke of the tool, and for ejecting it when the work has been completed. Provision is also made for continuous automatic operation."

The patent to Anderson relates to a drilling machine. It discloses a machine on a travelling carriage. The carriage travels along rails and the machine is utilized for drilling spaced holes in a long work piece. The machine includes a movable mounted

drill driven by a motor, and is designed to move in a horizontal direction. Means are provided for axial movement of the tool through forward and reverse strokes. The forward stroke is made by means of compressed air admitted into a cylinder. The compressed air acts upon a piston in the cylinder, thus pushing the tool through the forward stroke. The effect of the compressed air, while it effects the forward stroke, compresses a spring designed to move the tool axially through the reverse stroke when the force of the compressed air ceases.

The patent to Balcker relates to a multiple drill press controlling means of the pneumatic type. The device of the patent contains a double acting air piston for moving the tool under the control of a treadle. A stop device mounted on a suitable support is provided to render the mechanical feeding inactive.

The patent to Leland relates to a tool controlling device and discloses a plunger motivated by a spring for the operation of a switch.

The patent to Morgan relates to machine tools and in particular to the control of power driven mechanism designed to move work piece and tool toward each other in order to place them into operative association. The device includes a foot pedal designed to raise the platen by depression of the pedal. A foot pedal switch is designed to control the apparatus through electrical circuits.

The patent to Johnson, 2,111,784, concerns a honing machine in which one or more rapidly rotating honing tools are reciprocated by hydraulic means. The machine discloses a switch so that the machine may be caused to operate automatically, independent of other controls, when so desired by the operator.

The patent to Kingsbury relates to a machine tool structure having feeding apparatus for reciprocating the tool. It is said to be particularly concerned with drilling and like operations by combined reciprocating and rotating motion of the tool holder relative to the work. A holding circuit is disclosed in connection with the tool advancing mechanism, and it is further shown that, at the end of the stroke, the maintaining circuit is interrupted.

The patent to Johnson, 2,133,170, relates to a tilting mechanism for concrete mixers of the tilting type. The device described discloses a cylinder with low pressure air maintained constantly in the upper end thereof, and high pressure air intermittently supplied to the lower end of the cylinder for the purpose of moving the piston within the cylinder against the resistance of the lower pressure air for the forward or discharge stroke of the mechanism. When the high pressure air is released, the low pressure air moves the piston to its original position. The function of the cylinder is for tilting a concrete mixer from a charging to a discharging position.

The patent to Schwartz relates to a countersinking and blind drilling machine. It discloses an apparatus for drilling a work piece placed on a support plate. A rotatable drill is shown actuated by an electric motor. The drill moves axially in forward and reverse strokes and is motivated by means of a lever, cylinder, and spring. It appears that when the work piece is placed on the support it depresses projecting pins which close a switch in control of a solenoid. The action of the solenoid is to release air from the cylinder whereupon the piston in the cylinder is returned to its uppermost position by the expansion of the spring. Such spring action turns the lever clockwise so that other springs are affected to move the drill to and through the work. It appears that the means by which the tool of the patent is moved axially in forward and reverse stroke is "compressed air operated" for the reason that the return stroke is caused by the admission of compressed air into the cylinder.

Claims 5, 6, 7, 20, 21, and 24 were all rejected upon the Schwartz and Kingsbury references. Of that group, claim 5 is illustrative and reads as follows:

"5. The combination in a machine of the class described of a movably mounted tool, means for moving said tool axially through forward and reversed strokes, means including an electric circuit for controlling said forward and reverse strokes, means for supporting a work piece

in position to be engaged by said tool, means actuated by the movement of a work piece to said position for establishing a temporary condition in said circuit which initiates said forward stroke, and means actuated during the initial portion of said forward stroke for establishing another circuit condition which causes the forward stroke to be continued."

Claim 6 is similar to claim 5 except for the addition "when said forward stroke has continued to a predetermined extent for actuating said circuit to effect said reverse stroke." Claim 7 adds to claim 6 "means for automatically arresting said reverse stroke when said tool has been returned to its normal position." Claims 20, 21, and 24 are similar to claim 5 except that they include "compressed air operated means" for moving the tool through forward and reverse strokes. Claim 20 adds more specifically a description of the holder for the work piece, than does claim 5, and claim 21 adds to claim 20 means for arresting the forward stroke after a predetermined movement and causing the air operated means to effect a reverse stroke. Claim 24 differs from claim 5 in the recitation of a solenoid in the circuit to control forward and reverse strokes in addition to a manually operated switch designed to initiate the forward stroke. It also shows switches actuated by tool movement for controlling the continuance and stopping of the forward stroke.

Claims 25, 26, and 27 form another group of which claim 25 is illustrative, reading as follows:

"25. The combination in a machine of the class described of a tool holder, means adapted to be operated by compressed air for moving said tool holder axially of said tool, means for supplying low pressure air continually to said first-named means for retracting said tool holder and normally holding it in its retracted position, means for supplying air at a higher pressure to said first-named means for moving said tool holder through a working stroke against the pressure of said low pressure air, means including an electric circuit for controlling said compressed air supplies, and manually operated means for actuating said circuit to initiate said working stroke."

The board reversed the reason for the examiner's rejection of claim 25, but under rule 139 of the Rules of Practice, U. S. Patent Office, 35 U.S.C.A.Appendix, gave a new ground of rejection for that claim on the Schwartz patent in view of the Johnson patent, 2,133,170. The board affirmed the examiner's rejection of claims 26 and 27 on those references.

Claim 26 differs from claim 25 only with respect to the last clause of claim 25. The last two clauses of claim 26 are directed to "a fixture for holding a work piece in position to be engaged by said tool, and a switch actuated by the movement of a work piece to said position for actuating said circuit to start said working stroke." Claim 27 adds to claim 26 switches which are actuated in response to the movement of the tool holder for actuating the control circuit to complete and then arrest the working stroke, and then cause said tool holder to be retracted.

Of the group of claims 28 and 29, claim 28 is illustrative and reads as follows:

"28. The combination in a machine of the class described, of a movable mounted tool, compressed air operated means for effecting forward and reverse strokes of said tool, means including an electric circuit and solenoid-operated valves connected in said circuit for controlling said compressed air operated means, a switch connected in said circuit and adapted to be actuated by a work piece when placed in the path of said tool for actuating said circuit to start said forward stroke, a foot pedal switch connected in said circuit and adapted to be operated to actuate said circuit to start said forward stroke, and means for altering said circuit to render either of said switches operative at the will of the operator."

That claim was rejected on the Schwartz patent with the patent to Morgan. Claim 29 was rejected upon those references with a further citation of the Johnson patent, 2,111,784.

Claim 29 is similar to claim 28 except that it adds "said last-named means being capable of operation to render both of said switches inoperative and to cause said compressed air operated means to effect a continuous series of forward and reverse strokes of said tool."

Claims 30 to 34 inclusive and 38 to 40 inclusive were rejected on either of the patents to Anderson or Balcker in view of the Johnson patent, 2,133,170. Claim 30 is illustrative of that group and reads as follows:

"30. The combination in a machine of the class described of a movably mounted tool, means including a cylinder and piston for moving said tool axially with respect to the work, means for constantly supplying low pressure air to said cylinder at one side of said piston to retract said tool and to hold it normally in its retracted position, means for admitting air at a higher pressure to said cylinder at the other side of said piston to move said tool through a working stroke against the action of said low pressure air in said cylinder, means for exhausting said last-mentioned air pressure from said cylinder at the end of said working stroke, and means including an electric circuit for starting and determining the length of said working stroke."

Claim 31 differs from claim 30 in the recitation of "said higher pressure air being adapted to be further compressed upon the retardation of said tool when it is in engagement with the work, and additional means for retarding the movement of the tool at the end of said working stroke." Claim 32 differs from claim 31 in that it recites the means for adjusting the length of the working stroke. Claim 33 differs from claim 30 only by the addition of "means for adjusting the rate of flow of said higher pressure air to said cylinder and the rate of said exhaust therefrom." Claim 34 differs from claim 30 in that it provides for "means for adjusting the pressures of the air supplied to opposite sides of said piston, and means for adjusting the rate of flow of said higher air pressure." Those two clauses take the place of the last clause of claim 30. Claim 38 adds to claim 30 "means for adjusting the length of said working stroke and for determining the point at which said additional retarding means is actuated." Claim 39 adds to claim 30 "means for starting said forward storke, and means for automatically insuring the continuance of said forward stroke after it has been started." Claim 40 differs from claim 39 in that it refers specifically to the switches for the continuance of the forward stroke recited in the last clause of claim 39.

Claims 50 and 51 were rejected as unpatentable over the Leland or the Schwartz patents. They read as follows:

"50. A work holder for use in a machine having a tool which is movable axially through forward and reverse strokes comprising, a support for a work piece having means for guiding the work piece to a definite position therein, an electric switch adapted to be connected in an operating circuit of said tool and having an operating member adapted to be actuated by said work piece when said work piece is moved to said position, and means for actuating said operating member to eject said work piece from said groove.

"51. A work holder for use in a machine having a tool which is movable axially through forward and reverse strokes comprising, relatively movable members adapted to grip a work piece, fluid pressure operated means for effecting said relative movement, one of said members having means for positioning said work piece, a switch adapted to be connected in an operating circuit of said tool and including an operating member adapted to be actuated by said work piece when said work piece is moved to said position, and means for actuating said operating member to eject said work piece when it is released by said relatively movable members."

■ The Board of Appeals properly pointed out that claim 5 does not show that the means for moving the tool axially in forward and reverse strokes is "compressed air operated" and without such limitation the claim reads directly upon the apparatus of the Schwartz patent except for its last clause which requires a holding circuit to short circuit the switch which is actuated during the first part of the forward stroke. It is clear that the Kingsbury device discloses such holding circuit designed for use in a tool advancing mechanism. The circuit and the shunt or holding circuits are illustrated and clearly described in the Kingsbury patent. Even though in the patent the shunt switch is manually operated, it was proper, con-

trary to the contention of appellant, to cite that patent as was done by the tribunals below. The operation, which is performed by the switch in the Kingsbury device, is the same operation which takes place in appellant's device when his foot pedal operated switch is depressed to initiate the movement of the tool. We do not think it would involve invention to use the holding circuit disclosed in the Kingsbury patent in the structure of the Schwartz device. The elements of the Schwartz structure discussed by the tribunals below are not questioned by appellant, and there is nothing in the reasons of appeal contending that the Kingsbury device does not disclose a holding circuit. It seems to us that it would be obvious to anyone skilled in the technical art here involved without the exercise of invention to apply the holding circuit of the Kingsbury device to the structure of the Schwartz patent. Since claims 6, 7, 20, 21, and 24 in their slight differences from claim 25 can not render those claims patentable, we agree with the Patent Office tribunals that the rejection of that group on the patent to Schwartz taken with the patent to Kingsbury was proper.

We agree with the holding of the board that the only feature of claim 25 which differentiates it from the disclosure of the Schwartz patent appears in the phrases "means for supplying low pressure air continually to said first named means for retracting said tool holder" and "means for supplying air at a higher pressure to said first named means for moving said tool holder through a working stroke against the pressure of said low pressure air." The Johnson patent, 2,133,170, clearly discloses a pneumatic motor designed to operate in the same manner as the motor in the involved application. The piston in the cylinder of the Johnson device is brought into operation, as has been heretofore noted, by intermittently applied high pressure air to the lower end of the cylinder in which the piston operates as against the low pressure air maintained in the upper end of the cylinder. It is clear that when the pressure at the lower end of the Johnson device is released that the piston will be reversed in its action because of the force of low pressure air exerted against its upper end. We believe it would be obvious to one skilled in the art to substitute the pneumatic motor of the Johnson device for the Schwartz motor to move the tool of the Schwartz device. Appellant contends in his brief that the Schwartz device does not show solenoid operated valves as referred to in claim 25. We find nothing in the record, however, that such matter was called to the attention of the Board of Appeals, and there is no specific assignment of error with respect thereto. As it was not called to the attention of the board, obviously there was no error in failing to consider it. In re Davis, 103 F.2d 922, 26 C.C.P.A. (Patents) 1249. We do not see that claims 26 and 27 distinguish patentably over the limitations of claim 25, and, therefore, we approve the decision of the board in rejecting that group as unpatentable over the Schwartz patent in view of the patent to Johnson, 2,133,170. Certainly, merely changing the type of motor power would be obvious to one skilled in the art. In re Gregory et al., 112 F.2d 838, 27 C.C.P.A. (Patents) 1345.

The basic reference relied upon in the rejection of claims 28 and 29 is the patent to Schwartz. That patent appears to disclose every element contained in claim 28 except the foot pedal switch and the means for altering the circuit recited after defining the foot pedal switch. The Morgan patent discloses a foot pedal switch designed to control the apparatus through electrical circuits. It seems to us that it would not involve invention to add to the Schwartz machine the foot pedal switch of the Morgan device. We see no invention involved by the mere addition of another or manual control to the machine of the Schwartz patent and a switch whereby that control may be shifted from the work actuated control to a manual or pedal operated control. Appellant states in his brief that the foot pedal of the Morgan device is not a switch. The patent to Schwartz shows an electrical switch and the only question presented with respect to claim 28 is whether the providing of a foot pedal switch involves invention. Clearly it is common knowledge of which we may take judicial notice that for many

years past foot operated electrical switches have been used on automobiles, switching the headlights from a low to a high beam and back again. The foot operated electrical switch to close the circuit of an electrical starting motor in an automobile is also well and commonly known.

■ Claim 29 adds to claim 28 as hereinbefore noted a still further control which may be substituted for one of the other controls when so desired by the operator, but it appears to us that such third control is disclosed in the patent to Johnson, 2,111,784. In the patent structure a switch is provided so that the operator may, when he wishes to do so, cause the machine to operate automatically, independent of the other controls. No one of the three controls can operate when one control is in operation and the assembling of several controls, each of which separably is known to be old in the prior art, with a switch for manual operation connecting any one of them into the machine, does not involve invention.

The Board of Appeals fully agreed with the reasoning of the Primary Examiner rejecting claims 30 to 34 inclusive and 38 to 40 inclusive on the patent to Balcker or the patent to Anderson in view of the patent to Johnson, 2,133,170. A machine is disclosed in the patent to Anderson in which there is a movable mounted tool and means including a cylinder and piston for moving the tool axially with respect to the work. The piston operates in one direction through the force of compressed air and in the other direction by the expansion of a spring which has been compressed on the former stroke by the compressed air. In the electric circuit for starting and determining the length of the working stroke, there is a solenoid together with other members. In our opinion it would not require invention for one skilled in the art to substitute for the cylinder and piston assembly of the Anderson structure, the cylinder and piston assembly disclosed in the Johnson patent, 2,133,170. In that assembly means are shown for keeping a constant supply of low pressure air in the cylinder on one end of the piston, thus holding it normally in retracted position, and means for supplying the high pressure air on the other end of the piston in order to move the tool through its working stroke against the action of the low pressure air. The additional means disclosed in the Johnson patent, 2,133,170, for retarding the movement of the tool at the end of the working stroke comprises a plug entering into a recess in the upper part of the cylinder. We agree with the holding of the board that there is no invention in supplying the Anderson device with means for adjusting the work stroke for the reason that such means is clearly disclosed in the Balcker patent. Neither is there any invention in providing a holding circuit for the electric circuit shown in the Anderson device. We agree with the board in its holding that "No invention is involved in applying a holding circuit to any electric control circuit." With respect to claim 40, the holding circuit is not set out as being actuated by tool movement. It is merely stated that it is actuated "upon the movement" of the tool and certainly any holding circuit is inherently actuated after the starting circuit has been closed.

It is true, as pointed out by appellant, that the patentee Balcker discloses no means for moving the tool as required by claims 30 to 34 inclusive and 38 to 40 inclusive, by reason of the absence of constantly applied air pressure. That pressure, however, is present in the structure of the Johnson patent, 2,133,170, and even though the elements of the Johnson device, as contended by appellant, "could not be substituted bodily in either Balcker or Anderson," nevertheless in the last analysis it is merely substituting one motor for another which we think is clearly within the skill of the art. It may be true, as urged by appellant, that, with respect to claim 30, the Balcker structure does not in its "stop" provide for any adjustment corresponding to certain nuts of appellant. However, claim 30 does not call for adjustment by nuts, and it is clear to us that the stop of the Balcker device is a means for "determining the length of the stroke." That is all that is required in claim 30.

■ Claim 32 recites means for adjusting the length of the stroke. A stop is shown in the Balcker device which, even if it does not imply adjustment, we

533

534

think that invention would not be involved in merely making such element adjustable. In re Brandt, 64 F.2d 693, 20 C.C.P.A. (Patents) 1005. However, three other collars are disclosed in the Balcker patent similar to the stop, and it is clear that those collars are adjustable on their supports. Appellant contends that in claim 33 the means for adjusting the rate of air flow shown there is not disclosed in the prior art. Since no reason of appeal alleges error on the part of the Patent Office tribunals in that respect, it will not be considered. In re Davis, supra. Appellant makes the same contention in his discussion of claim 34. He states that "None of the references relied upon discloses anything corresponding to the pressure regulators" in that claim, and for that reason claim 34 should be allowed. There is nothing in the record to indicate that such contention was called to the attention of the board. In re Davis, supra. Since we have hereinbefore held that in our opinion it does not involve invention to apply a holding circuit to any electric control circuit, it is not necessary to discuss appellant's contention in connection with claim 39 that only the Kingsbury patent has been cited disclosing any such feature, which disclosure of the patent, appellant contends, would cause inoperativeness when applied to the Schwartz device. In addition to our holding above mentioned with respect to the holding circuit, the patent to Johnson, 2,133,170, discloses such a circuit through a coil after the push button which starts the switch has been pushed to a closed position. The holding circuit may be clearly seen in the drawings of the Johnson device. Any difference between the holding circuit there and that of appellant's structure is merely functional, but since in this case patentable distinctions must rest on structure and not function, in our opinion such circuit of appellant is not patentable in view of that disclosed in the Johnson patent. The Johnson device, with respect to the holding circuit, clearly discloses circuit elements employed for maintaining the starting circuit which is closed after the push button is released. Therefore, we can not agree with appellant's contention.

Of course it is true, as pointed out by appellant with respect to claim 40, that the references do not show contacts which are actuated by movement of the tool to provide for a continuation of the forward stroke. The board did not hold to the contrary. It pointed out that the claim does not require that the holding circuit is to be actuated by the movement of the tool, but "only upon the movement of the tool." That quoted expression can have reference to nothing except time. In other words, the time when the circuit would be actuated. Surely when any holding circuit is used in connection with a starting circuit or initiating a tool movement, such movement takes place when the starting circuit is closed and not by the movement of the tool.

Claims 50 and 51 are drawn to a specific form of work ejecting means. The work piece contact member in the Schwartz device and in the Leland device is spring urged and obviously will have a tendency to eject the work piece, as shown in appellant's structure and defined by those claims. The ejecting effect of the spring is necessarily governed by its strength in relation to the weight of the work piece to be affected. Therefore, the ejection means recited in claims 50 and 51 can not lend patentable distinction to claims 50 and 51 over the prior art.

We have given careful consideration to the voluminous and carefully prepared brief of appellant, but are compelled to conclude that the rejection of the involved claims by the tribunals below was proper, and, therefore, the decision appealed from must be affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.